UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

October 3, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Steven S. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-3298-BAH

Dear Counsel:

On December 21, 2022, Plaintiff Steven S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' briefs (ECFs 11 and 13), and Plaintiff's reply (ECF 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the SSA's decision and REMAND the case to the SSA for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on November 18, 2014, alleging a disability onset of September 18, 2014.[1] Tr. 727–36. Plaintiff's claims were denied initially and on reconsideration. Tr. 445–52, 454–57. On August 24, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 98–126. On November 14, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 331–47. The Appeals Council then vacated the ALJ's decision and remanded the case to an ALJ. Tr. 348–54.

A second hearing was held before a different ALJ on May 15, 2019. Tr. 127–60. That ALJ issued an unfavorable decision on July 2, 2019. Tr. 355–75. The Appeals Council then vacated that decision and remanded Plaintiff's case to a different ALJ. Tr. 376–80. A third hearing was held by a third ALJ on June 22, 2022. Tr. 161–95. That ALJ issued an unfavorable decision on July 6, 2022. Tr. 15–48. The Appeals Council denied Plaintiff's request for review of that

---

[1] Plaintiff subsequently amended the alleged period of disability to a "closed period of disability, from June 27, 2011 to March 31, 2019." Tr. 18.

[2] 42 U.S.C. §§ 301 et seq.

*Steven S. v. Kijakazi*
Civil No. 22-3298-BAH
October 3, 2023
Page 2

decision, Tr. 3–9, so the decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the requested closed period of disability, from June 27, 2011 to March 31, 2019." Tr. 23. At step two, the ALJ found that "[d]uring the requested closed period of disability, . . . the claimant had the following severe impairments: schizoaffective disorder/psychotic disorder; depressive disorder; and autism spectrum disorder." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of "obesity" and a "back disorder/spine disorder" during this period.[3] Tr. 23–24. At step three, the ALJ determined that "[d]uring the requested closed period of disability, . . . the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 24. Despite these impairments, the ALJ found that during the closed period of disability, Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He was limited to occasional exposure to loud and very loud noise as defined in the Dictionary of Occupational Titles (DOT)). He could tolerate occasional interaction with coworkers and supervisors but should have had no interaction with the general public. He was not capable of sustaining work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. He was capable of using judgment to make simple work-related decisions, capable of dealing with occasional changes in a routine work setting, and capable of understanding, remembering, and carrying out simple instructions. He could perform tasks on a regular and sustained basis to complete a normal work day and week.

---

[3] Specifically, the ALJ concluded that Plaintiff's "back disorder/spine disorder" was not medically determinable but also found that "[i]n the alternative, if the evidence were found to support a back/spine disorder as an impairment, it would be non-severe[.]" Tr. 24.

Tr. 28. The ALJ determined that Plaintiff was unable to perform past relevant work as an unloader (DOT[4] #929.687-030) during the relevant period but could perform other jobs that existed in significant numbers in the national economy during that period. Tr. 37–38. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant period. Tr. 39.

### III. LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ's decision was not supported by substantial evidence because: (1) "the ALJ directly undermined her own conclusion that Plaintiff's 'work activity' was inconsistent with his allegations"; (2) the ALJ erroneously disregarded a third-party function report authored by Plaintiff's mother; (3) the ALJ erroneously determined that Plaintiff's symptoms were inconsistent with various "treatment notes"; and (4) "the ALJ applied an incorrect legal standard when considering the limiting effects of Plaintiff's symptoms." ECF 11, at 8–20. Defendant counters that substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairments because: (1) the RFC finding is consistent with SSA regulations and Fourth Circuit precedent; (2) the ALJ properly considered Plaintiff's past and current work as one factor among others in crafting the RFC; (3) the ALJ properly considered Plaintiff's daily activities and Plaintiff's mother's third-party function report; (4) the ALJ's conclusions regarding Plaintiff's treatment history were reasonable; and (5) the ALJ did not use an incorrect legal standard when considering the limiting effects of Plaintiff's symptoms. ECF 13, at 7–24.

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Steven S. v. Kijakazi*
Civil No. 22-3298-BAH
October 3, 2023
Page 4

      The Court begins by considering Plaintiff's second argument because it finds the argument dispositive. Pursuant to regulations applicable to claims (such as Plaintiff's) filed before March 27, 2017, an ALJ may evaluate "information or statement(s) from a nonmedical source (including [the claimant]) about any issue in [a] claim" as evidence. 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Moreover, "[o]pinions from . . . nonmedical sources may reflect the source's judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Accordingly, the SSA "consider[s] these opinions using the same factors" used to weigh medical source opinions in claims filed before March 27, 2017. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). Indeed, "an opinion from . . . a nonmedical source may outweigh the medical opinion of an acceptable medical source[.]" 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

      Against this regulatory backdrop, this Court has determined that remand is warranted where an ALJ erroneously evaluates the opinion of a claimant's friend or family member who opines on the claimant's abilities. *See Roita T.B. v. Berryhill*, No. TMD-18-33, 2019 WL 1316992, at *1 (D. Md. Mar. 22, 2019). In *Roita T.B.*, an ALJ discounted third-party function reports prepared by a claimant's friend and son because the reports' authors were not "disinterested third-party witness[es]." *Id.* at *5. The Court determined that this analysis constituted error because "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless [the ALJ] expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Id.* (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)). The Court further observed that "[a] lack of support from the overall medical evidence is . . . not a proper basis for disregarding the observations of [lay] witnesses," as "third-party function reports may offer a different perspective than medical records alone," rendering them "valuable." *Id.* (quoting *Diedrich*, 874 F.3d at 640). The Court remanded the case and directed the ALJ to "provide reasons germane to each witness for disregarding [their] testimony." *Id.*

      The Court reached the same conclusion in *Paul P. v. Saul*, No. GLS-19-2793, 2021 WL 1134751, at *1 (D. Md. Mar. 24, 2021). There, a claimant's mother submitted a third-party function report which the ALJ discounted due to a lack of support in the medical evidence of record. *Id.* at *5. "[F]ollowing *Roita*," the Court determined that the ALJ's proffered rationale for disregarding the report was erroneous. *Id.* The Court remanded the case and directed the ALJ to "state with specificity the reasons for disregarding the written testimony in the function reports submitted by Plaintiff's mother." *Id.*

      Turning to the instant case, a careful review of the ALJ's decision reveals that the ALJ committed the same error identified in *Roita T.B.* and *Paul P*. Here, at step two, the ALJ concluded that Plaintiff suffered from severe "schizoaffective disorder/psychotic disorder; depressive disorder; and autism spectrum disorder" from 2011 to 2019. Tr. 23. The ALJ also determined that Plaintiff has "a moderate limitation" in concentrating, persisting, and maintaining pace and a "mild" limitation in adapting and managing himself. Tr. 26. The ALJ then evaluated the evidence of record which included a third-party function report prepared by Plaintiff's mother. Tr. 35. With respect to the function report, the ALJ noted that Plaintiff's mother

      stated that the claimant cannot be around large groups of people or loud noises. She

> added that[] the claimant can perform his activities of daily living, but he seems to lose track of what he says, and he cannot remember things. Overall, her assessments are given little weight, because the claimant's mother is not an acceptable medical source, and the evidence on file does not support the extent of her allegations. The claimant's memory is generally intact, on examination. He scored well on the Mini Mental State Examination. Score subtests during IQ testing showed some variability, but deficits in attention are generally attributed to his mood symptoms, versus his cognition. The record does reflect autism spectrum disorder, which has been considered and accounted for in the RFC, but given the claimant's prior work activity for Walmart, his documented improvement with treatment, and his current, ongoing work activity with his mental impairments on his prescribed course of treatment, the evidence does not support the extent of the allegations provided by the claimant's mother in this report.

*Id.* (internal citations omitted).

This analysis constituted error for several reasons. First, the ALJ erred by giving "little weight" to the function report on the basis that Plaintiff's mother is "not an acceptable medical source." *Id.* Plaintiff's mother need not be such a source to provide relevant testimony. As stated above, a nonmedical source may properly opine on "some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). "The fact that a lay witness is a family member cannot be a ground for rejecting [the witness's] testimony." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *see Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (recognizing that "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition."). Accordingly, the ALJ's assignment of "little weight" to this opinion on the ground that it was not prepared by "an acceptable medical source" constituted error. Tr. 35.

The ALJ also erred by discounting the testimony of Plaintiff's mother on the basis that "the evidence on file does not support the extent of her allegations." *Id.* It is, of course, the ALJ's province to make credibility determinations and to resolve conflicts in the evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). But, as stated above, a "lack of support from the overall medical evidence is . . . not a proper basis for disregarding" lay testimony, as such testimony offers a useful perspective on a claimant's abilities which differs from that which is gleanable through medical records. *Roita T.B.*, 2019 WL 1316992, at *5. Indeed, "testimony from lay witnesses who see the claimant every day is of particular value," and such witnesses "will often be family members." *Smolen*, 80 F.3d at 1289. Here, the ALJ erred by dismissing Plaintiff's mother's testimony upon the basis that it was incompatible with the objective evidence of record. Tr. 35. Instead, the ALJ should have either: (1) taken Plaintiff's mother's testimony into account in crafting the RFC or (2) given "reasons germane to" Plaintiff's mother, rather than the remainder of the evidence, for discounting the testimony. *Roita T.B.*, 2019 WL 1316992, at *5.

The ALJ's error was not harmless. Among other things, Plaintiff's mother opined that Plaintiff deals poorly with stress and changes in routine. Tr. 872. However, the ALJ determined at step two that Plaintiff had only a "mild limitation" in adapting and managing himself. Tr. 26.

*Steven S. v. Kijakazi*
Civil No. 22-3298-BAH
October 3, 2023
Page 6

Moreover, Plaintiff's mother testified that Plaintiff can only walk for about a mile before needing to rest. Tr. 871. However, the RFC contains no physical limitations. Tr. 28. Accordingly, a proper evaluation of Plaintiff's mother's function report on remand may alter the ALJ's conclusions at step two as well as the RFC determination in this case. For these reasons, remand is warranted. On remand, the ALJ must evaluate the third-party function report prepared by Plaintiff's mother in accordance with all relevant SSA regulations. If the ALJ decides to disregard the report, they must support that decision with "reasons germane" to the report's author. *Roita T.B.*, 2019 WL 1316992, at *5.

Because this case is being remanded on other grounds, I need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider these arguments and make any required adjustments to the opinion. In remanding, I express no opinion as to whether the ALJ's ultimate determination that Plaintiff was not entitled to benefits was correct.

## V.     CONCLUSION

For the reasons set forth herein, the SSA's judgment is REVERSED due to inadequate analysis pursuant to sentence four of 42 U.S.C. § 405(g). The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge